UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                                                    Involuntary Chapter 7
                                                                          Case No. 10-79280-DTE
IDEAL MORTGAGE BANKERS, LTD,
a/k/a LEND AMERICA,
a/k/a CONSUMER FIRST LENDING KEY,

                    Debtor.
-------------------------------------------------------------------x

## MOTION OF PETITIONING CREDITORS FOR THE
## APPOINTMENT OF AN INTERIM TRUSTEE

EAM Land Services, Inc. ("EAM Land"), PSS Settlement Services, LLC n/k/a First Choice Settlement, LLC, Evans National Leasing, Inc., and Michael A. McLean, Sr., and Kimberly E. Rogers McLean (collectively, the "Petitioning Creditors"), by their respective attorneys, submit this motion (the "Motion") in support of the entry of an order, pursuant to 11 U.S.C. § 303(g) and Rule 2001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the appointment of an interim trustee for the Alleged Debtor Ideal Mortgage Bankers Ltd, a/k/a Lend America, a/k/a Consumer First Lending Key (the "Alleged Debtor" or "Lend America"), respectfully sets forth as follows:

### BACKGROUND

1.  On November 30, 2010 (the "Filing Date"), an involuntary petition (the "Involuntary Petition") was filed against the Alleged Debtor by Petitioning Creditors, EAM Land Services, Inc. ("EAM Land "), PSS Settlement Services, LLC n/k/a First Choice Settlement, LLC and Evans National Leasing, Inc., for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").  A copy of the Involuntary Petition is attached as Exhibit "A".

2.  An Involuntary Summons was issued on December 1, 2010.  An Order for Relief has not been entered.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this Motion pursuant to 11 U.S.C. §303 et seq., and 28 U.S.C. §1334(b). This is a core proceeding pursuant to 28 U.S.C. §§157 (a) and (b)(2)(A) and (b)(2)(O).

4. Venue in this District is proper pursuant to 28 U.S.C. §1409(a). The statutory predicates for the relief requested are 11 U.S.C. §§105(a) and 303(g).

**BACKGROUND AND PROCEDURAL HISTORY**

5. On or about December 1, 2009, the Alleged Debtor Ideal Mortgage Bankers, LTD d/b/a Lend America lost its ability to originate loans that were backed by the Department of Housing and Urban Development ("HUD"). As a result, Lend America was effectively out of the business of originating new loans and over 600 employees lost their jobs.

6. In connection with the investigation by HUD into the practices of Lend America, initially, one of the Petitioning Creditors, EAM Land, uncovered that Lend America was committing a fraud on at least 66 of its files maintained with EAM Land.

7. EAM Land commenced an action in the Supreme Court of the State of New York, County of Nassau, against Lend America and related individual defendants by way of Order to Show Cause ("OSC") with a request for a Temporary Restraining Order ("TRO") and a Summons and Verified Complaint (the "Complaint") dated December 9, 2009 under caption <u>EAM Land Services, Inc. v. Ideal Mortgage Bankers, Ltd., d/b/a Lend America d/b/a Consumer First Lending Key, EAM Settlement Services Inc., Michael Primeau, Michael Howard Ashley, Helene Decillis, Dawn Maneri, Gwen Lucas, Diana Rodriguez, Capital One Bank, N.A., and "John Doe #1" Through "John Doe #10", the last ten names being fictitious and unknown to the</u>

<u>plaintiff, if any, having or claiming an interest in the funds to be restrained</u> (the "State Court Action"), Index No. 09-025102.[1]

8.  By way of background, EAM Land sought to immediately restrain and permanently enjoin all defendants in the State Court Action from utilizing, transferring or hypothecating any and all assets of the then corporate entities identified as Ideal Mortgage Bankers, Ltd., d/b/a Lend America d/b/a Consumer First Lending Key, and EAM Settlement Services, Inc. Specifically, EAM Land was concerned that certain individual defendants who at the time of, or immediately prior to, the request for the TRO were still employees, officers or authorized agents of the State Court defendants and could transfer or cause to be transferred, assets of the State Court defendants. Having heard argument in support of the TRO and cognizant of the gravity of the potential harm, the Honorable Joel K. Asarch, JSC, signed the OSC which contained a TRO on December 9, 2009 (the "December 9, 2009 TRO") and scheduled a hearing before the Honorable Stephen A. Bucaria for December 18, 2009 on the request for a permanent injunction (the "December 18, 2009 Hearing"). A copy of the December 9, 2009 TRO is annexed hereto as <u>"Exhibit "B"</u>.

9.  EAM Land alleged in the State Court Action that it was a victim of Lend America's fraud which included the improper utilization of refinance loan proceeds for purposes other than those designated on the HUD-1 Settlement Statements. Additionally, EAM Land alleged that it relied on the Alleged Debtor's misrepresentations and omissions when EAM Land issued its title insurance policies in favor of Lend America. Included in the allegations is the belief that certain employees and officers of the State Court Defendants assisted and aided in

---

[1] A Verified Amended Complaint (the "Amended Complaint") dated February 19, 2010 was filed with the Court and served on the newly added individual defendant in the State Court Action.

-3-

Case 8-10-79280-las    Doc 5    Filed 12/02/10    Entered 12/02/10 14:07:52

the perpetuation of those misrepresentations and omissions.

10. Specifically, in early December 2009, EAM Land had learned that approximately sixty-six (66) out of state borrowers (the "Borrowers") involved in real estate loan transactions with the Alleged Debtor were incredulously making mortgage payments on two (2) recorded mortgages against their real property. These Borrowers were identified in the State Court Action. These Borrowers were led to believe that at the time of their refinance transaction with the Alleged Debtor, that their first mortgages were being paid off. The Alleged Debtor engaged in purposeful and intentional manipulation of HUD-1 Settlement Statements and checks drawn from its operating account maintained at Capital One Bank, NA ("Capital One"). Additionally, the Alleged Debtor accomplished its scheme through the assistance of Kenneth Golden, Esq., a lawyer authorized to practice law in the State of New York. Mr. Golden was the settlement agent for the Lend America files through an entity called EAM Settlement Services, Inc.[2]

11. Within weeks of their alleged refinance transactions, these Borrowers were contacted by their original note and mortgage holders noting late payments, defaults, and in some instances, threats of litigation. Additionally, certain Borrowers had contemplated payoffs of lines of credit, tax liens, car loans, credit cards and other debt obligations from the proceeds of their transaction. By the time these Borrowers were able to confirm that the mortgage proceeds were not properly allocated, delinquencies were reported to the credit agencies, foreclosure proceedings were commenced, automobiles were threatened to be repossessed and these borrowers were broke. There was absolutely no ability to service ALL of the debt these Borrowers now found themselves *still* responsible for.

---

[2] There is no connection between the petitioning creditor EAM Land Services, Inc. and EAM Settlement Services, Inc.

12.     Unaware of the extent of the fraud and the number of other borrowers not yet identified, EAM Land through its counsel, quickly moved to request that the State Court issue a restraint against the assets of Lend America so that the identifiable assets were no longer available to be dissipated at the Alleged Debtor's pleasure.  This was all accomplished through the explosive greed of Lend America, with the specific assistance of the individual defendants in the State Court Action.  The principals of Lend America, upon information and belief, established a separate department of employees at its offices to deal with consumer complaints.  The main goal of the department was to delay, frustrate and obfuscate the situation.

13.     During December 2009, there were constant hearings before the State Court related to the TRO, the collection of money, payment to employees and dissipation of assets.

14.     Counsel for the New York State Banking Department (the "NYSBD") was also present during the December 2009 hearings and noted for the record his position which included a concern for the consumers as well the former employees of the Alleged Debtor.  The State Court expressed its astonishment at the far reaching effects of the self-serving greed which was slowly coming to the surface.

15.     The State Court was presented with a myriad of issues which were not and could not be readily disposed of:

> THE COURT: This is a terrible position that a lot of people have been put in. ...Without making any determination as to guilt or innocence– that's not the purview of this Court– it would seem to me that an awful lot of innocent people are being punished and being made to pay for the behavior of people who have been highly, highly paid, and if this Court could in any way figure out how to effectuate the request, I would do that. ... There's no receiver.  There's no trustee.  There's no one that I can go to who will act responsibly and reasonably and in a way that's satisfactory to the state or the federal government that I can see.

Transcript of December 18, 2009 pp 5, 6 and 7 (hereinafter referred to as "Tr. December 18, 2009"). (Annexed hereto as Exhibit "C").

16.     Simultaneous with the State Court's signing of an Order which could accommodate the concerns of the Plaintiff EAM Land and impose a permanent restraint against any transfers of any of the Lend America's assets, the State Court expressed its appreciation to counsel for the efforts in trying to reach an accord which would alleviate the pain of the borrowers and the pain of the employees:

> THE COURT:   I will tell particularly the people who are here, and ask you to please relay this to the people you know, your associates, if you will, we spent a lot of time, all of the attorneys, on how we could do this, how in fact we could carve out this payment and effectuate, but we can't until we have that corporate resolution or alternative entity in this place, which hopefully, will occur at some time. There's nothing we can do. But actually, each of the attorneys tried to, within the constraints of the law, and the positions which they have to deal with, tried to figure that out.  So when I say– and you will hear momentarily, I really do wish to compliment and to thank the attorneys, I don't want you in the back [ Lend America employees present in Court] to be misled that I' happy by the outcome. ... I wish I had an alternative.  I don't see an alternative.

Tr.  December 18, 2009 pp 9-10 (Exhibit "C").

17.     Solely through the efforts of EAM Land's counsel, and based upon the pleadings filed with this State Court and the persuasive oral arguments proffered, the State Court converted the TRO into a permanent injunction.  The Order was issued December 18, 2009 (the "Injunction Order").  A copy of the Injunction Order is annexed hereto as "Exhibit "D".

18.     During this process, EAM Land, through its counsel, had identified the source of one of the warehouse lenders for Lend America and traced the proceeds to at least twenty-six (26) of the borrowers.  In an effort to quickly and accurately identify the Borrowers whose loans were to be paid off by the warehouse lender, EAM Land's counsel arranged for an in person meeting with the representatives of the warehouse lender. Representatives from Gateway Bank, FSB ("Gateway") had traveled from California to Melville, New York, the site of the Alleged Debtor's principal place of business (the "Premises") in a hurried state to unravel the deceptive

and negligent loan practices of the Alleged Debtor. Simultaneous and in an equally hurried state, the NYSBD began its review of the real estate transactions of the Alleged Debtor. Counsel for NYSBD recognized that the extraordinary efforts of EAM Land, through its counsel, tremendously contributed to the relief that allowed the employees to be paid and also allowed certain mortgages to be paid.

> MR. BROOKS: There are 27 loans, 27 loans out of what might be 1,500 loans that have not been funded by this company since July of this year- *first of all, I'll start by applauding Mr. Maniscalco and his colleagues for bringing the restraining order to seize the money. That was absolutely the right thing to do.*

Tr. December 23, 2009 p. 12-13 (Emphasis Added).

19. Additionally, EAM Land's counsel was contacted by the United States Attorney's Office (the "U.S. Attorney") regarding its investigation into the affairs of the Alleged Debtor. Finally, counsel for Fannie Mae and Ginnie Mae are also involved in the investigation. The far-reaching effects of the unscrupulous lending and business practices of the Alleged Debtor has destroyed many consumers.

20. On December 28, 2009, in response to the December 9, 2009 TRO Order, Capital One Bank turned over to EAM Land's counsel, LH&M, the sum of $3,734,981.25. That money was deposited into an attorney escrow account (the "Escrow Fund") initially established for the benefit of the identified borrowers as authorized in the December 23, 2009 State Court Order Directing Turnover and Payment. While this is clearly a significant sum that was restrained, a substantial portion of it has already been used to pay employees wages, pension payments, medial payments and mortgage satisfactions of Borrowers.

21. In a separate action, another of the petitioning creditors, PSS Settlement Services, LLC, n/k/a First Choice Settlement, LLC, filed an action entitled <u>PSS Settlement</u>

Services, LLC, v. Ideal Mortgage Bankers Inc. d/b/a Lend America d/b/a Consumer First, Lending Key, PSS Settlement Services, Inc., Michael Primeau, Michael Howard Ashley, Helene Decillis, Dawn Maneri, Gwen Lucas, Diana Rodriguez, Aaron Bhatia, Jennifer Murphy, Kenneth Golden, Capital One Bank, N.A., EAM Land Services, Inc., with a request for a temporary restraining order, assigned Index No. 000248/10. Plaintiff PSS Settlement Services, LLC ("PSS Settlement") and sought relief (the "PSS Settlement Action") substantially similar to what the State Court had granted in its December 18, 2009 Injunction Order. By Short Form Order dated February 8, 2010, the State Court granted a temporary restraining Order in the PSS Settlement Action (the "February 8, 2010 TRO Order").

22. The Alleged Debtor was shut down by HUD when it lost its ability to originate loans that were backed by HUD. The Alleged Debtor effectively was out of business on or about December 2009. Representatives of the NYSBD were at the Premises of Lend America and seized the books and records. Yet, neither of these agencies has been authorized to seize any assets and has not been able to afford the Borrowers, the consumers nor the parties to this litigation the relief they seek.

## APPLICABLE LAW

23. It is well settled law that an interim trustee will be appointed in an involuntary bankruptcy case where it can be shown that such appointment is necessary to preserve the property of the estate or to prevent loss to the estate. See, e.g., In re Amanat, 340 B.R. 713 (Bankr. S.D.N.Y. 2006). See also In re DiLorenzo, 161 B.R. 752 (Bankr. S.D.N.Y. 1993).

24. 11 U.S.C. Section 303(g) provides, in pertinent part, that:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and a hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United

States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

25. Courts have routinely authorized the installation of interim trustees "in instances where the court has found that it would protect and preserve property of the estate, In re Alpine Lumber & Nursery, 13 B.R. 977, 979 (Bankr. S.D. Cal. 1981); In re Reed, 11 B.R. 755, 757 (Bankr. S.D.W.Va. 1981); prevent concealment, waste or loss of assets by the alleged debtor, In re Alpine Lumber & Nursery, 13 B.R. at 979; In re Rush, 10 B.R. 518, 523 (Bankr. N.D. Ala. 1980); or prevent irreparable harm which would likely result between the time of the filing of the petition and the scheduled hearing, In re Reed, 11 B.R. at 757. See also 2 Collier on Bankruptcy, ¶ 303. 13[1], at p. 303-76-77 (15th ed. rev. 2003) (court may appoint interim trustees to preserve property of the estate or prevent loss, concealment, or conversion of assets)." In re DiLorenzo, 161 B.R. 752, 754 (Bankr. S.D.N.Y. 1993). See also In re R.S. Grist Co., 16 B.R. 872 (S.D.Fla.1982); Slawek v. Guiliano, 1994 U.S. Dist. LEXIS 14310 (E.D.Pa. 1994).

26. Appointment of an interim trustee is appropriate to: (i) ensure a recovery through the preservation of assets which form the basis for fraudulent avoidance actions or (ii) ensure that remaining assets to satisfy claims are not dissipated. In re James Plaza Joint Venture, 62 B.R. 959 (Bankr. S.D. Tex. 1986) (granting trustee's motion to appoint interim trustee for an affiliate of the debtor where the affiliate: (i) transferred real property without consideration, (ii) subsequently sold the property, and (iii) retained the proceeds of sale for distribution to its own creditors, in order to preserve: (i) a fraudulent conveyance action, or (ii) the debtor's claim to the proceeds if the transfer was held unavoidable).

27. Appointment is also warranted where -- as here -- the Alleged Debtor: (i) has lost its ability to fund FHA loans, (ii) is out of business and not operating, (iii) is subject to two

-9-

permanent injunctions issued in the State Court Action, and (iv) has no representatives preserving assets for the benefit of creditors. In re R.S. Grist Co., 16 B.R. 872 (S.D. Fla. 1982) (granting appointment of interim trustee where debtors failed to make pre-petition note payments and admitted their inability to pay down the notes).

28.    In the same vein, courts in this district recognize that the loss of causes of action that would result in recovery to the estate due to conflicts of interest of control persons is a sufficient ground for appointment of a trustee. In re Euro-Am. Lodging Corp., 365 B.R. 421, 428 (Bankr. S.D.N.Y. 2007) (citing, e.g., In re Microwave Prods. of Am., Inc., 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989)); see In re Microwave Prods. of Am., Inc., 102 B.R. at 676 ("[B]ecause the debtor is not in a strong posture to pursue possible claims that may have resulted from conflicts of interest and fraudulent transfers, a trustee would likely be able to investigate claims that could result in additional sums of money coming into the estate" as "[t]he failure of the debtor to investigate potential avoidable or preferential transfers weigh heavily in favor of appointing a trustee.").

29.    At bottom, "[t]he appointment of a trustee will ensure the protection of the debtor's assets [(including claims for transfers by non-debtor affiliates)] so that an informed judgment as to the debtor's future may be made later by the trustee and the creditors of this estate." In re McCorhill Publ'g, Inc., 73 B.R., 1013, 1018 (Bankr. S.D.N.Y. 1987) (alteration added).

30.    Finally, one of the strongest arguments against appointing interim trustees pursuant to Section 303(g) -- namely potential harm to the business operations of the Alleged Debtor -- is absent here. Lend America lost its ability to originate FHA loans backed by HUD

in December 1, 2009 and has been out of business ever since.  Therefore, no prejudice exists to business operations that would justify a refusal to appoint an interim trustee.

    31.    Application of these principles warrants the appointment of an interim trustee. Without the appointment of an independent trustee, claims, interests and valuable causes of action against Alleged Debtor may be lost.

## **BOND**

    32.    "An interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fee, expenses and damages allowable under § 303(i) of the Code."  Fed. R. Bankr. P. 2001(b).

    33.    Section 303(i) of the Bankruptcy Code permits -- but does not require -- a court to order petitioning creditors to indemnify an alleged debtor for fees, costs or damages. See 11 U.S.C. § 303(i).  Not only is Section 303(i)'s application permissive, but it is only applicable to a dismissal of an involuntary petition without the consent of the petitioning creditors.  *Id.*

    34.    No bond is needed under Section 303(i) for several reasons.  First and foremost, even assuming dismissal without the consent of the Petitioning Creditors, Lend America is not an operating company and is currently subject to a permanent injunction in the State Court Action.  Therefore, there can be no injury to Lend America in connection with an impact on non-existent business operations.

    35.    Next, it is unlikely that the involuntary petition against Lend America will be dismissed without the Petitioning Creditors' consent as: (i) they meet all eligibility requirements, (ii) Lend America is insolvent and unable to pay its debts as they come due based upon its failure to originate FHA loans, (iii) Lend America is subject to a permanent injunction

-11-

entered in the State Court Action, and (iv) the principals of Lend America have invoked their rights under the Fifth Amendment.

36. Finally, Lend America is unlikely to litigate vigorously, especially given that it has already been shutdown and ceased business operations a year ago. Even assuming that Lend America were to litigate vigorously, such litigation would likely be funded or undertaken due solely to the self-interest of the Principals, who have all pled the Fifth Amendment. This Court should not require the Petitioning Creditors to indemnify fees, costs and expenses incurred simply to preclude liability of the self-interested principals. This Court is urged to exercise its discretion and waive the posting of a bond pursuant to Section 303(e).

37. For the reasons fully articulated herein, the appointment of an interim trustee is clearly required in order to ensure that the assets of the Alleged Debtor are preserved and/or recovered for the benefit of creditors.

38. Based on the foregoing, it is respectfully submitted that substantial grounds clearly exist for the appointment of an interim trustee to act for the benefit of creditors of the Alleged Debtor. An interim trustee will have no concerns competing with his fiduciary obligations to the Alleged Debtor's creditors, an as such, will be in the best position to assess the Alleged Debtor's affairs, commence any actions necessary to recover assets, and effectuate an orderly liquidation of the Alleged Debtor.

39. Finally, as the Alleged Debtor has apparently ceased operations, there will be no prejudice to the Alleged Debtor upon the appointment of an interim trustee, which will only serve to ensure that the assets of the Alleged Debtor are collected, liquidated and distributed in accordance with applicable law.

## **CONCLUSION**

40. By virtue of the foregoing, it is respectfully submitted that appointment of an interim trustee in this case is warranted and in accord with applicable law.

41. No prior application or motion for the relief requested herein has been made to this Court or any other Court.

42. It is respectfully requested that this Court waive any requirement for the filing of a separate statement pursuant to Local Bankruptcy Rule 9077-1 and a memorandum of law in connection with this Motion, as the applicable law is set forth herein.

**WHEREFORE**, the Petitioning Creditors respectfully request that an Order be entered appointing an interim trustee for the Alleged Debtor, together with such other and further relief as this Court deems just and proper.

Dated: Wantagh, New York
       December 2, 2010

> **LaMONICA HERBST & MANISCALCO, LLP**
> Attorneys for Petitioning Creditor EAM Land Services, Inc.
>
> By:    */S/ Joseph S. Maniscalco*
>        Joseph S. Maniscalco, Esq.
>        A Member of the Firm
>        3305 Jerusalem Avenue, Suite 201
>        Wantagh, New York 11793
>        (516) 826-6500

*M:\Documents\Company\Cases\Lend America\Motion to Appoint Interim Trustee\Motion appoint interim Trustee Final.wpd*