UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:  Chapter 7

IDEAL MORTGAGE BANKERS, LTD.,  Case 10-79280 (DTE)
a/k/a LENDAMERICA,
a/k/a CONSUMER FIRST LENDING KEY,

    Debtor

**<u>Creditor Global Appraisal Solutions Motion for Relief from Stay, and Request for Allowance of Claim as Administrative Expense and Disbursement as a Matter of Law</u>**

**and**

**<u>Motion for Reimbursement of Legal Expenses and Other Relief</u>**

Background

RESPECTFULLY COMES, Movant, Laurence Holzer, individually, and as Managing Member of Global Appraisal Solutions, ("Global"), and states that Global is a creditor in the estate of Ideal Mortgage Bankers, ("Ideal"), and has filed a proof of claim.

In this Motion, Global submits Federal Laws, Regulations, and Case Law on which it's arguments hinge, and prays that after review, that Your Honor will allow the Global claim as an Administrative Expense and authorize its' disbursement as a matter of law.

The judgment for Global, against the Debtor, and the accompanying Proof of Claim that Global respectfully requests Your Honor to allow are attached as "<u>Exhibit One</u>."

The "Global Litigation History" against the Debtor and its Officers is attached as "<u>Exhibit Two</u>."

Global litigation that is the subject of this motion are available to Your Honor on Court Dockets;

<u>Case Number 2:09-CV-05078-(JFB)-(WDW)</u>: "Global Appraisal Solutions vs Ideal Mortgage Bankers"

<u>Case Number 2:10-cv-05490-(JFB)-(ETB)</u>: "Global Appraisal Solutions vs Michael Ashley; Fraudulent Conveyance Complaint."

Due to extraordinary hardship due to Global having been defrauded by its own attorney, Global has no attorney at this time. (<u>Exhibit Three</u>: "Summarized Global History with Former Attorney," "Trustee and Attorney to Trustee Fraud," and "Trustee Unfair Advantage")

Globals' current status with regard to Counsel is on the bankruptcy docket, and memorialized in detail in pleading; "Global Objections to Signing Trustee Proposed Order to Settlement with Defendant Michael Ashley."

Global has subordinated a hearing on the Trustee Motion and Globals' Objections to Signing the Proposed Order to a hearing on this motion.

Global believes it is in the best interest of the creditors and also in the best interest of Global for Global to refrain from hiring new counsel, pending a decision by Your Honor in this Motion.

Global asserts;

A. Its claim must be disbursed as a matter of law.
B. The Trustee has and is not acting in the best interest of the creditors due to conflicts.
C. The Trustee has withheld material information from Court and Creditors that is core to Creditor Recovery.

Global asserts that if Your Honor allows the Global claim as an administrative expense then the estate will avoid extensive litigation with Global and with the borrowers in Federal Mortgage Contracts that underlie the Global claim, and the estate will be able to preserve and direct its resources to the creditor's most reasonable chance for recovery by agreement with or litigation against HUD.

In allowance of the Global claim as an administrative expense, the estate will benefit from specific data that Global has that will aid the creditors in their most reasonable path to full recovery.

Global has already limited creditor losses and Global has also made a material and substantial contribution to creditor recovery that resulted in over one million dollars to the estate to date.

The Trustee and his Attorneys concealed known conflicts from the Court and Creditors that they were required to disclose.

Global has acted in good faith, and, in reliance on statements by the Attorneys to the Trustee that are now known to be false, Global is respectfully submitting this motion with hope of receiving a judicial intervention, granting this motion, that will preserve the estate and protect the interest of the creditors.

Allowance of the Global claim will result in Global:

A. <u>Withdrawing its impending "Motion to Dismiss."</u> Global had express correspondence with the Trustee and His Attorneys at the time of their appointment, and stated, "The bankruptcy is fraud and filed in bad faith."

The Attorney to Trustee withheld their knowledge of the bankruptcy fraud from the Court and Creditors due to their concealed conflicts.

(Exhibit Four: "Sample of information known to Trustee and his Attorney that they withhold from Court and Creditors")

B. <u>Withdrawing impending "Motion to Dismiss"</u> citing Trustee and his Attorneys acting in bad faith in failing to send Global the required "Notice of Creditor Meeting." Attorneys to Trustee had knowledge that Global was unrepresented and Global counsel had withdrawn after filing the Global proof of claim. (This is relevant in a to whether the Trustee or the Creditors have standing in a Creditor Adversary Complaint against HUD. It is also relevant to the conflicts that the Trustee the Trustee and His Attorney concealed from the Court and the Creditors to the imminent detriment of the Creditors and the preservation of the estate).
C. <u>Withdrawing liens that Global will imminently place on all of the properties</u> of the Federal Mortgage Contracts that underlie the Global claim. To date, Global relied on what Global wrongly believed was "good faith" of the Trustee and his Attorneys statements the Attorneys made, and as a direct result of said reliance, Global refrained from placing liens on the properties. Leaning the properties will "bankrupt" the estate, as a matter of Federal Mortgage Law, and upon information and belief, will place the Trustee in a position of liability to the creditors, and to HUD. Upon information and belief, the Trustee has a duty to limit HUD's exposure if possible.
D. <u>Withdrawing impending "Motion for Reconsideration and Motion to Vacate Order"</u> in the "Trustee Proposed Order for Settlement with Defendant, Michael Ashley:

(Exhibit Five: Summary of Pleadings: "Trustee Proposed Settlement with Defendant, Michael Ashley" and "Global Objections to Signing Proposed Order)." These pleadings are pending a hearing that has been expressly requested by Global, from the Honorable Dorothy T. Eisenberg, and expressly acknowledged by Her Special Counsel. <u>Exhibit Five</u> is also a discussion of the "Trustee Opposition to Global Motion for Relief from Automatic Stay as it appears on the docket and Globals' rebuttal To Trustee comments in Exhibit Five.)

Global asserts that it has had to persevere through and endure incremental hardship and has incurred quantifiable compensatory damages as a direct result of the Trustee and his Attorneys concealment of their conflicts.

Allowance of the Global claim as an administrative expense will enable the estate to avoid new litigation by the borrowers of the underlying mortgages that will arise as a direct result of Global placing liens on their properties that will result if the claim is not allowed.

In the event that Global leans the properties, and borrower litigation against the estate ensues, and degrades the estate, Global will assert that the creditors would have a right to sue the Trustee and his Attorneys to recover losses that will occur as a direct result of this motion not being allowed and the Trustee and his Attorneys concealment of their conflicts.

Global asserts that in allowance of the Global claim as an administrative expense, the Trustee has defenses against the creditors under the "Earmark Doctrine," and the Trustee and his Attorneys have acknowledged and withheld this from the Court and Creditors, due to conflicts.

Global asserts that the creditors have a reasonable path to recovery by suing HUD in an adversarial complaint, relying on specific data that Global has.

The strict requirements of Federal Mortgage Contract Law, state that HUD has dominion over its agent, the Debtor and that the Trustee concealed this form the Court and the Creditors due to conflicts.

Global has specific data in an action against HUD, that can reasonably be expected to result in creditor recovery, and Global has provided it to the Trustee, and the Trustee and his Attorneys have concealed this from the Court and the Creditors, due to their conflicts.

In the March 4th hearing, the Honorable Judge Dorothy T. Eisenberg concurred with Global and stated on transcript to the Attorney to Trustee: "Sue HUD! File an adversarial complaint against HUD! I will allow it in this case."

The Trustee and His Attorneys have concealed the right to sue HUD from the Creditors, due to conflicts.

Upon information and belief, the Honorable Judge Eisenberg made her comments as a result of her review and interpretation of documents submitted to Your Honor by Global and not by the Trustee. Global asserts this is due to Trustee withholding from Court due to conflicts.

### Global Made Material Contribution to Creditor Recovery and to Limiting Creditor Losses

Pursuant to United States Bankruptcy Code, Section 503, (2B), that authorizes payment of administrative expenses;

11 U.S. Code Section 503 (2B) makes allowance for administrative expense for;

(2B): "a creditor that recovers, after the court's approval, for the benefit of the estate, 'any' property transferred or concealed by the debtor;

Global asserts; as a direct result of Global litigation against the Debtor and its Officers, that Global made a material contribution, for the benefit of the estate.

Global limited creditor losses while the Debtor was operating, and to date, Global recovered in excess of one million dollars in property that was concealed by the Debtor and fraudulently transferred by its former officers; Michael Ashley ("Ashley"), Helene Decillis, ("Decillis"), and the Debtor's former counsel, Kenneth Golden ("Golden").

(Exhibit Two: Global Litigation History)

Among all creditors on the claims register, including HUD, Global was the first party to sue the Debtor and to receive a judgment. (Exhibit Two)

Despite Global obtaining the Debtor's bank accounts and then giving them to the Trustee under 2004 examination, the Trustee REFUSED to meet with Global or to take the deposition of Global, despite Global having expressly advised the Trustee and his Attorneys that Global currently has specific data that the Trustee does not have, that can aid the creditors in making a full recovery, that the creditors otherwise cannot and will not make.

The Trustee and his Attorneys concealed this from the Court and the Creditors due to conflicts.

The Trustee and his Attorneys withheld from the creditors that a creditor action against HUD has been authorized and deemed "reasonable" by the Honorable Judge Dorothy T. Eisenberg, and is available on the transcript from the March 4, 2014 hearing.

The Trustee has taken no action to date, due to conflicts.

The reason Global has not turned its data over to the Trustee is because the Trustee and his Attorneys, due to their concealed known conflicts, have repeatedly acted in bad faith, and not in the best interest of the creditors and the Trustee and his Attorneys have refused the data.

(Exhibit Six: Trustee Duties and Concealed Conflicts)

Global, despite having collected over one million dollars, from the Debtor's former officers to date, also believes that additional monies can be obtained from the Debtor's former officers, due to assets of the Debtor's former officers that Global believes are currently protected under bankruptcy, but that should not be protected, due to the criminal element of the Defendant Ashley, with specific relation to the Global claim.

Global asserts that the Trustee, ("Barnard" or "Trustee") and the attorneys that Barnard hired; the Law Firm, Silverman Acampora, ("Trustee Attorneys"), Anthony Acampora, individually, ("Acampora"), Lon Seidman, individually, ("Seidman"), and Justin Krell, ("Krell"), individually, know and should know that they have conflicts and that they withheld said conflicts from the Court and the Creditors.

Global asserts that the Trustee and his Attorneys collectively lack material data that they know Global retains, with regard to the financial condition of the Defendants in the adversarial complaint; Case Number: Adv. Pro. No.: 12-08443; that is the subject of the "Trustee Proposed Settlement with Defendant, Michael Ashley."

## Global Made Material Contribution in Connection with the Prosecution of a Criminal Offense Relating to the Debtor, Former Officers, and With Regard to the Business and Property of Debtor

11 U.S. Code Section 503 (3C) makes allowance for administrative expense for;

    (3C): "a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

As a direct result of Global litigation and contribution, the Debtor's former Officers, Ashley and Decillis, have been charged with numerous felonies in District Court. The disposition of criminal defendant, Michael Ashley is pending in front of the Honorable Judge Spatt.

Global asserts and the Trustee and his Attorneys have concealed from the Court and the Creditors, due to conflicts, that there is an "unresolved subject matter jurisdictional issue" with "specific regard" to the "alleged asset" that criminal and civil defendant, Michael Ashley has agreed to "transfer" to the estate of the Debtor, and is core to the "Trustee Proposed Settlement" with Defendant, Michael Ashley.

Defendant, Michael Ashley appeared before and was previously sentenced by the Honorable Judge Spatt, approximately one decade ago, for "wire and bank fraud."

Ironically, Ashley is currently in front of the Honorable Judge Spatt again for similar crimes and that the crimes Ashley committed are the subject of the Global claim.

The Honorable Judge Spatt, in sentencing Ashley for wire and bank fraud in Ashley's former case, established a precedent, in that, as a component of Ashley's criminal sentence and Federal probation, he was required to "pay restitution."

Global asserts that by allowing the Global claim as an administrative expense that the estate will benefit by avoiding litigation that Defendant, Michael Ashley's "restitution to Global" in criminal court has subject matter jurisdiction and priority over the bankruptcy.

In allowance of the Global claim, the estate will benefit by avoiding litigation that Global will otherwise assert that the "instrument" of transfer in the "Trustee Proposed Settlement with Ashley" is not an asset of the Debtor or of Ashley individually.

Rather, Ashley, as Officer of the Debtor, collected Third Party fees, pursuant to Federal Mortgage Law, and then feloniously conspired with his former attorney, Kenneth Golden, to co mingle and raid the Golden Trust Accounts, to steal funds that the Debtor was required to collect on behalf of third party, Global and to immediately disburse.

(Exhibit Ten: Summary of Contribution that Global made to Creditor Recovery, Limiting Creditor Losses, and Prosecution of Debtors' former officers.)

The Global claim arises as a direct result of verifiable unpaid residential appraisals on consumers' primary residential dwellings, and the civil and criminal elements surrounding the prosecution thereof.

The applicable Federal Mortgage Law requires strict compliance, is controlling, and requires the Debtor and its officers to collect and promptly disburse appraisal fees to Global.

Ashley, HUD Prosecutors, and the Trustee and his Attorneys all know that Ashley's failure to disburse the appraisal fees to Third Party Global and to instead conspire with Kenneth Golden, co mingle and raid the trust accounts, while continuing to originate mortgages and bundle them as GNMA insured securities for sale, using appraisals provided by Global, in the context of Ashley's criminal investigation that was ongoing and, in light of Ashley attestations, is "wire, bank, and securities fraud."

(Exhibit Seven: Federal Mortgage Law Requiring Strict Compliance and Federal Criminal Law Real Estate Appraisal Fraud is prosecuted as "wire bank, and securities fraud.")

Most of the appraisals Global provided to the Debtor that are the subject of the Global claim were used by the Debtor in the Federal "Hope For Homeowners' Program" and other Federal relief programs that have even more strict compliance standards and "separate statutory protections.

(Exhibit Eight: Federal Mortgage Law: Hope For Homeowners Program)

### Imminent and Adverse Effect on the Estate if the Claim is Not Allowed

Federal Mortgage Law states that "non-payment" of appraisal fees is "appraisal fraud" and "mortgage fraud" itself.

Criminal Defendants Ashley and Decillis both knew since January, 2009 of Global claims for payment and concealed from HUD, when required to disclose to HUD, upon information and belief, due to HUD's criminal investigation that was ongoing, and the former officers knowledge that non-payment of appraisals in this case is also criminal.

Criminal Defendants Ashley and Decillis both knew since January, 2009, that "burying" Globals' appraisals and using bogus, artificially inflated appraisals in their place, constitutes wire, bank, and securities fraud.

(<u>Exhibit Nine</u>: Appraisal Fraud Prosecuted as Wire Fraud)

If Global leans the properties, and the borrowers become aware of the fraud in in their mortgages, the borrowers will have a right to sue HUD and the Debtor.

The Truth in Lending Act states that the "borrowers could not have known" they were defrauded and therefore they do not have to prove fraud," and that "there is no statute of limitations" pertaining to known mortgage and appraisal fraud.

In the Federal Statures section of this motion, included are excerpts from 15 U.S.C. 3601 et. seq, "Fair Housing Act," under section titled "Retrospective Relief" may include, requiring the financial institution to make payments to injured parties" and under section "restitution," such as fees, expenses in connection with the application."

Global asserts that the only reason it did not assert these claims prior to now is because Global relied on the good faith of the Trustee.

Global recently learned that the Trustee and his Attorneys have no good faith, and have instead deliberately concealed their conflicts from the Court, and now to the impending detriment of the creditors.

Global believes that the litigation expense to the estate that will arise as a direct result of Global leaning over 1600 properties would bankrupt the estate, to the detriment of the creditors, and that if this occurs, that the creditors will have a right to sue the Trustee and his Attorneys.

## Jurisdiction

With "specific regard" to "subject matter jurisdiction," Global asserts that;

  A. <u>On the issue</u> of whether or not the Global claim should be allowed as an administrative expense, Global believes this issue "is core" to the bankruptcy and the Bankruptcy Court has jurisdiction.

  B. <u>On the issue</u> of whether or not the District Court or the Bankruptcy Court has jurisdiction over the "asset" that criminal and civil defendant, Michael Ashley, proposes to transfer to the estate; as memorialized in the "Trustee Proposed Settlement with Defendant, Michael Ashley," Global asserts that that District Court has subject matter jurisdiction and that allowance of the Global claim will enable the estate to avoid litigation on Globals' impending Motion to Vacate Order.

## Summary of Trustee Prior Knowledge of Conflicts

Global asserts that the Trustee and his Attorneys had knowledge since the time around their appointment; that;

A. Global provided material assistance in recovery for creditors and in prosecution of Defendant Ashley; and Global acquired and produced the Debtor's bank accounts that resulted in over one million dollars being recovered by the estate.
B. Global and the Trustee both knew the bankruptcy itself is fraud and was not filed in good faith. Trustee and his Attorneys are aware that the bankruptcy is fraud and is easily verifiable with the taking of one deposition of the Debtor's former officers.
C. The "alleged instrument" or "asset" that Defendant Ashley proposes to "transfer" to the estate, in the "Trustee Proposed Settlement with Ashley" not an asset of the Debtor or of Ashley individually; but rather, are funds that have been collected by the Debtor on behalf of Third Party Global, and co-mingled with Golden by Ashley and that District Court has subject matter jurisdiction over this criminal offense.
D. That the creditors have a reasonable path to recovery from HUD and that the Trustee is concealing this from the Court and the Creditors, due to conflict.

## Summary of Navigant Conflicts

The Trustee and his Attorneys hired an accounting firm, Navigant, to do its forensic accounting.

Navigant knew or should have known the nature of the Debtor's core business, the criminal nature of the fraudulent transfers by the Debtors' officers, and the role of HUD.

Navigant knew or should have known that HUD took assets from the Debtor that HUD knows belong to the creditors.

Upon information and belief, Navigant concealed this from the Court and the Creditors, due to conflicts with the Trustee and his Attorneys who hired Navigant.

## Summary of HUD's Role

HUD attorneys to the bankruptcy docket have knowledge of the Global claim and it's nature, against the Debtor and the Debtor's officers, due to the fact that the original Global complaint against the Debtor was filed and in the public domain, prior to HUD's original complaint in the same jurisdiction.

HUD argued its complaint against the Debtor before the Honorable Judge Bianco, who is the same Judge that heard the Global complaint.

In the year 2010, HUD attorneys to the bankruptcy docket received express mail from Global, shortly after the Trustee was appointed, requesting that HUD attorneys "take an express position" regarding the Global claim for unpaid appraisals.

HUD chose to conceal the Global claim from the Court, upon information and belief, due to HUD's assessment of its liability to the creditors.

In this case, Global reasserts that HUD was and is aware of its exposure to the borrowers of the mortgages of the underlying Global claim.
Even if the Global claim is allowed, pursuant to Federal Mortgage Law, the borrowers have a right to sue HUD and this is why HUD concealed and avoided taking a position on the Global claim.

(Exhibit Eight: HUD Liability Summarized)

> WHEREFORE,
>
> in consideration of the contribution that Global has made to limiting creditor losses, and in consideration of the contribution that Global has made to the recovery of the creditors, and in consideration of the contribution that Global made to the prosecution of the Debtor's former officers pursuant to 11 U.S. Code Section 503 (2B) and (3C);
>
> and in consideration of the applicable Federal Mortgage Law that requires strict compliance,
>
> and in light of the benefits to the estate in the avoidance of litigation of the Global claim;
>
> Global prays Your Honor determines that:
>
> A. Global Made a material contribution to creditor recovery;
>
> B. Global made a material contribution to limiting creditor losses;
>
> C. Global made a material contribution to prosecuting the Debtor's former Officers;
>
> D. Global is able to continue to make a material contribution to creditor's reasonable path to recovery;
>
> E. Allowance of the Global claim preserves the estate;
>
> and in so doing, Global prays that Your Honor will grant Global;

A. Applicable Relief from Stay; Pursuant to 11 U.S.C.A. Section 362,

> "(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay;
>
>> (1) Under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;"

B. Allowance of the Global Claim, as an administrative expense;

C. Allowance of interest on Global Claim pursuant to the Order awarding damages;

D. Recovery of $25,000 in actual legal expenses in the litigation of these claims.

Respectfully Submitted,

_____
Laurence Holzer,
Individually, and As Managing Member,
Global Appraisal Solutions, LLC

## CERTIFICATIONS

I, Laurence Holzer, declare, under penalty of perjury, that I mailed by Federal Express, overnight air, a copy of the "Motion for Relief from Stay and Allowance of Global Claim as administrative expense, on April 19, 2014, to:

Honorable Carla E. Craig
United States Bankruptcy Judge,
United States Bankruptcy Court,
For the Eastern District of New York,
Alfonse M. D'Amato Federal Courthouse,
Courtroom 760
290 Federal Plaza
Central Islip, New York 11722

Lon Seidman,
Attorney to Trustee Ken Barnard
Silverman Acampora, LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York, 11753

The Office of the United States Trustee,
Long Island Federal Courthouse
560 Federal Plaza
Central Islip, New York 11722